**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) YANTIS CORNELIUS YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO: 20-CV-258-JED-FHM |
| | ) | REFILING OF 19-CV-00052-JED-JFJ |
| vs. | ) | |
| | ) | |
| (1) STATE OF OKLAHOMA, | ) | |
| (2) OKLAHOMA DISTRICT | ) | |
| ATTORNEY'S OFFICE FOR DISTRICT | ) | |
| 10, OSAGE and PAWNEE COUNTIES, | ) | **COMPLAINT FOR DAMAGES** |
| (3) MICHAEL FISHER, in his official | ) | **VIOLATION OF CIVIL RIGHTS** |
| capacity as District Attorney for District 10 | ) | **(42 U.S.C. Section 1983)** |
| of the State of Oklahoma, | ) | |
| (4) MICHAEL FISHER, in his individual | ) | |
| capacity, | ) | |
| (5) CITY OF TULSA, and | ) | JURY TRIAL DEMANDED |
| (6) DETECTIVE RONNIE | ) | ATTORNEY LIEN CLAIMED |
| LEATHERMAN, individually and in his | ) | |
| capacity as a police officer for the City of | ) | |
| Tulsa, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW,** the Plaintiff, Yantis Cornelius Young ("Young"), by and through his

attorney of record, Ronald E. Durbin, II of Durbin Law Firm, PLLC, and for his Complaint,

alleges and states as follows, to wit:

### JURISDICTION AND VENUE

1.     This is a refiling of Northern District Case No. 19-CV-52 which was voluntarily

dismissed by Plaintiff on June 7, 2019.

2.     This action arises out of the Constitution and laws of the United States of America

and is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over

these claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear all nonfederal question claims contained herein due to the fact that said claims are inextricably linked to the acts and/or omissions giving rise to the federal question claims.

4.    This case is properly filed in the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. §1391 as the judicial district wherein all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

5.    That at all times relevant hereto, Plaintiff Young was a citizen of the United States and a resident of Tulsa County, State of Oklahoma.

6.    That at all times hereinafter mentioned, the Defendant, State of Oklahoma (hereinafter "the State"), is a political subdivision of the United States of America.

7.    That at all times hereinafter mentioned, the Defendant, Oklahoma District Attorney's Office for District 10, Osage and Pawnee Counties, is a political subdivision of the State of Oklahoma.

8.    That at all times hereinafter mentioned, the Defendant, Michael Fisher, in his official capacity as District Attorney for District 10 of the State of Oklahoma, is the officially elected District Attorney for said counties.

9.    That at all times hereinafter mentioned, Michael Fisher, in his individual capacity, is a resident of Osage County, State of Oklahoma.

10.   That at all times hereinafter mentioned, the Defendant Osage County is a political subdivision of the State of Oklahoma

11.   That at all times hereinafter mentioned, the Defendant, City of Tulsa, is a political subdivision of the State of Oklahoma.

12.   That at all times hereinafter mentioned, the Defendant, Tulsa Police Department, is an agency of the City of Tulsa.

13.   That at all times hereinafter mentioned, Detective Leatherman, in his official capacity, was a police officer employed by the City of Tulsa.

14.   That at all times hereinafter mentioned, upon information and belief, Detective Leatherman is a resident of Tulsa County, State of Oklahoma.

15.   That Defendants are properly sued directly under 42 U.S.C. § 1983 for their deliberately indifferent unconstitutional decisions, practices, policies, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which directly contributed to and/or caused the complained of constitutional and statutory violations and injuries.

16.   That this action arises out of an incident which occurred in Osage County, State of Oklahoma which is located in the Northern District of Oklahoma.

## FACTUAL BACKGROUND

17.   The Plaintiff Young was charged with first degree murder in Osage County, State of Oklahoma, on or about April 14, 2014.

18.   That the criminal complaint was filed as Osage County Case No. CF-2014-00119.

19.   The case was set for jury trial on February 1, 2016.

20.   During the Preliminary Hearing in this matter, the State of Oklahoma called Barry Robbins to testify.  Mr. Robbins constituted the State's only witness to the events at issue herein.

21.     That Barry Robbin's testimony at the Preliminary Hearing in this matter was recorded by court reporter and transcribed.

22.     That Young's counsel made numerous attempts to reach Barry Robbins after the Preliminary Hearing in this matter and was unsuccessful in those attempts.

23.     That because of the inability to reach Barry Robbins by telephone, Young's counsel attempted to locate Mr. Robbins at his last known place of employment, Car Toys in Tulsa Oklahoma, but learned that he was longer employed there.

24.     That on the afternoon of January 28, 2016, Young's Counsel made a final attempt to reach Mr. Robbins by driving to an address for Mr. Robbins.  That prior to knocking on the door, Young's counsel called Barry Robbins from a cellular telephone, and Mr. Robbins answered the phone.

25.     That Mr. Robbins indicated that he "never checks his voicemail" in response to counsel's question about why he never called back.

26.     That Barry Robbins informed counsel that he is represented by attorney Chad Greer related to the matter and requested that counsel contact Mr. Greer.

27.     That counsel returned to the office and called Chad Greer.  At that time, Mr. Greer indicated that Mr. Robbins hired him because of concerns Mr. Robbins had about pressure being placed upon him by Michael Fisher as Assistant District Attorney for the District Attorney for Osage County following his testimony at Preliminary Hearing, and he wanted to have an attorney represent him in all conversations with Michael Fisher as Assistant District Attorney for the Osage County District Attorney's Office.

28.  That after receiving Mr. Greer's permission to speak to his client, Young's counsel again contacted Barry Robbins. Because Mr. Robbins had not heard from Mr. Greer, he was unwilling to speak with Young's counsel.

29.  That Young's counsel contacted Chad Greer again to inquire about Barry Robbins' meetings with the Osage County District Attorney.

30.  That Chad Greer informed Young's counsel that Barry Robbins was approached by a detective with the Tulsa Police Department following his testimony at the Preliminary Hearing in this matter. Mr. Greer was unable to confirm the name of the detective who approached Barry Robbins following that testimony, but during the trial of this matter, it was determined that the detective was Ronnie Leatherman, the lead detective for the Tulsa Police Department in this matter.

31.  That during the trial of this matter, it was established that Detective Leatherman contacted Barry Robbins at the behest of Michael Fisher.

32.  That after his conversation with Detective Leatherman, Barry Robbins felt coerced, and Mr. Robbins hired Mr. Greer.

33.  That according to Chad Greer, he and Barry Robbins met with Detective Ronnie Leatherman for the first time approximately eight (8) months prior to the originally set trial date in this matter.

34.  That according to Chad Greer, he and Barry Robbins met with Detective Ronnie Leatherman at least twice.

35.  That according to Chad Greer, those conversations may have been recorded.

36.  That according to Chad Greer, during at least one of those meetings, Detective Ronnie Leatherman was taking notes on a laptop computer.

37.   That according to Chad Greer, he and Barry Robbins met with Mike Fisher with the Osage County District Attorney's Office approximately twice after the Preliminary Hearing in this matter and prior to the first setting for trial.

38.   That according to Chad Greer, Barry Robbins changed significant portions of his testimony during those meetings.

39.   That according to Chad Greer, Mike Fisher with the Osage County District Attorney's Office indicated to Barry Robbins that he would not seek charges against him related to this matter as a result of his change in testimony.  This promise was oral and not memorialized in writing.

40.   That because Chad Greer could not recall what Barry Robbins testified about at the Preliminary Hearing, he could not say for sure what all testimony was different.

41.   That Chad Greer indicated that Barry Robbins changed his testimony regarding the manner and speed at which Steven Harris was driving his Chevy Tahoe just prior to the incident.

42.   That Chad Greer did indicate that Barry Robbins changed his testimony to state that he, Barry Robbins, had a firearm at the scene in this matter.

43.   That Chad Greer did indicate that Barry Robbin's new testimony would directly contradict his sworn testimony that Steven Harris was the person that yelled, "I got you now" at the scene in this matter.

44.   That when Young's Counsel told Chad Greer he knew nothing regarding this change in testimony, Chad Greer was surprised that the Osage County District Attorney did not supplement its production in this matter.

45.   That after speaking with Chad Greer, Young's Counsel attempted to reach Barry Robbins again, and again he stated that he had not spoken to his attorney.

46.   That Young's Counsel attempted to reach Mike Fisher with the Osage County District Attorney via telephone in the afternoon of January 28, 2016, but the attempt was unsuccessful.

47.   That at 7:23 P.M., Young's Counsel sent Mike Fisher an email outlining several discovery issues, and specifically noted that he, "discovered additional failures by the State of Oklahoma to disclose evidence material to the outcome of this matter, **including inconsistent statements by at least one prosecution witness**" (emphasis added).  Young's Counsel provided his cellular telephone number and requested that Mike Fisher contact him to discuss these matters.

48.   That on Friday, January 29, 2016, Mike Fisher responded by email, but he **failed** to address Barry Robbins.

49.   That on January 29, 2016, Young's Counsel responded to Mike Fisher's email, and addressed multiple remaining issues, and stated:

> Finally, I have learned of several failures to disclose and/or misrepresentations made by you which appear to me to be intentional.  If not intentional, they are at least Brady violations.  First, I learned yesterday that Detective Leatherman met with Barry Robbins on several occasions since the preliminary hearing in this matter.  I also learned that you personally met with Barry Robbins and his attorney on at least two occasions.  Based on my inquiry into the content of those conversations, it appears that Barry Robbins may have significantly changed parts of his testimony and/or added additional facts which are material to this case.  In fact, the attorney for Barry Robbins was surprised you had not supplemented discovery in this matter.  The case I attached to my email yesterday is particularly important as it relates to that matter, and I would direct your attention to it.

50.     That on January 29, 2016 at 2:12 P.M., Mike Fisher responded.  That in this email, Mike Fisher again failed to address the change in testimony of Barry Robbins.

51.     That Marquis Hill was the first witness to arrive on the scene following the incident at issue in this matter, and he is deceased.  His interview was of critical importance to Young in this matter and failing to produce it is without excuse. The Osage County District Attorney failed to produce the video due to lack of proper communication between Michael Fisher and the Tulsa Police Department.

52.     That on January 29, 2016 at 3:54 P.M., Young's counsel again emailed Mike Fisher, and noted:

> Your email did not address Barry Robbins and the additional statements he made to you and to Detective Leatherman which I am led to believe contradict his prior statements.  As that case I emailed to you last night indicated, I am entitled to this information, and it should have been provided when these interviews occurred.  I was lucky to figure out Mr. Robbins had an attorney otherwise I would not know about these conflicting statements.

53.     That on January 29, 2016 at 4:19 P.M., Mike Fisher responded, **and for the very first time**, referenced a letter he allegedly sent on December 9, 2015 regarding the material change in Barry Robbins' testimony.

54.     That upon information and belief, Michael Fisher fabricated the letter for purposes of lying to Counsel and the Court due to his prior failure to notify Counsel about the change in testimony.

55.     That after fabricating the letter, Michael Fisher had his investigator scan and send the letter to Counsel.

56.     That the letter was a fraud, and never existed prior to January 29, 2016.

57.     That on January 29, 2016 at 4:28 P.M., Young's counsel responded to Mike

Fisher's purported December 9, 2015 letter, and stated:

> I have received no such letter from you dated December 9. I
> checked both 2014 and 2015. I also have not received the Motion
> in Limine you filed on January 25, 2016, and I would suspect that
> it should have been here by now. Fortunately, all mail received by
> this office is scanned immediately upon receipt and sent to me in
> an email, so it was easy enough to confirm that it was not received
> anywhere within the ten (10) days of December 9th of either 2014
> or 2015. I did receive a letter from you on December 9, 2015
> dated December 7, 2015, but that did not have any information
> about Barry Robbins contained therein.

58.     That on January 29, 2016 at 4:31 P.M., Young's counsel finally received a

forward of an email from Travis Fisher with the Osage County District Attorney's

Office to Mike Fisher containing a letter purporting to have been sent to Young's

counsel on December 9, 2015 regarding the changed testimony of Barry Robbins.

However, as previously addressed, that letter was created by Michael Fisher on or

about January 29, 2016 and backdated to December 9, 2015.

59.     That Counsel for Young responded by email at 5:02 P.M., and stated:

> Please provide me with any documentation or computer file wherein this
> letter was created, saved, and/or modified on or before December 9,
> 2015. If the letter was emailed to someone for printing, please provide
> documentation regarding that event. Also, please preserve all electronic
> records related to this letter dated December 9, 2015.

60.     That Young's Counsel has all mail received by his office scanned immediately

upon opening, and said mail is all sent electronically to the undersigned. That the

undersigned directed his secretary to check all mail from December 9, 2015

through the end of the year, to find all correspondence received from the Osage

County District Attorney. That other than a letter received on December 9, 2015

and dated December 7, 2015, which is not about Barry Robbins, this office did not receive any mailed correspondence from the Osage County District Attorney.

61. Michael Fisher failed to provide any electronic file where the letter was drafted because such a file would show that it was not created on December 9, 2015 as it purports.

62. That Young's Counsel reviewed the December 9, 2015 letter, and noted that the letter incorrectly listed Young's counsel's address as "**1602** S Denver Ave., Tulsa, OK 74119."

63. That this error was due to the haste at which Michael Fisher drafted the letter on or about January 29, 2016 in order to cover up his failure to produce exculpatory evidence in this matter.

64. That Young's counsel's address at that time was **1502** S Denver Avenue.

65. That on January 29, 2016 at 5:06 P.M. counsel for Young notified Mike Fisher by email of the incorrect address.

66. That the letter contains information concerning significant changes in the testimony of the only person called by the State of Oklahoma at the Preliminary Hearing that was present during the shooting at issue in this matter.

67. The purported change in the testimony of Barry Robbins constitutes material evidence which the State of Oklahoma should have produced in this matter, and failure to do so is a clear *Brady* violation.

68. Additionally, the State had an affirmative duty to reveal to Young's counsel the deals it makes with witnesses. *See, **Omalza vs. State of Oklahoma***, 911 P.2d 286,

307; 1995 OK CR 80, ¶79. *See also, **Mays vs. State of Oklahoma***, 594 P.2d 777; 1979 OK CR 27.

69. This last-minute revelation, coming less than three (3) days before the trial of this matter, was a clear violation of the State's obligations regarding discovery.  It prejudiced Young in that his entire defense was prepared in accordance with what was known by his counsel during that preparation.

70. Furthermore, the State of Oklahoma failed to produce until January 29, 2016, at least seven (7) pages of the Medical Examiner's file related to this matter and pictures from the Tulsa Police Department related to the ballistic testing in this matter.  They also continued to fail to produce the DVD containing the interview by Tulsa Police Department of Marquis Hill and failed to produce fingerprint reports, latent prints, and other fingerprint evidence held by that office.

71. That as a result of the wrongdoings of Michael Fisher, Young requested a continuance of the February 1, 2016 trial of this matter to resolve these issues.

72. That on February 1, 2016, a representative of the City of Tulsa Police Department appeared in court, and pursuant to a subpoena, produced to Young's Counsel additional records and documents.  Many of those documents and video and audio recordings had been withheld by Michael Fisher.

73. That the request, based in large part on the fraudulent letter created by Michael Fisher and the revelation that day that evidence had been withheld which was in the possession of the Tulsa Police Department, was denied by the Court.

74.     That during the hearing on the continuance, Counsel felt that the Judge was not handling the situation in a manner consistent with judicial ethics and requested that he recuse.

75.     That because of the hearing, the request for recusal, and the subsequent appeals, Mr. Young's trial was postponed until January 17, 2017, causing Mr. Young to spend an additional year incarcerated in Osage County Jail.

76.     By the time of Young's trial, Michael Fisher had been fired by the Osage County District Attorney for wrongdoing in this and other cases.

77.     That during the 2017 trial of the criminal complaint against Yantis Young, Mr. Young was found not guilty by the jury on the grounds of self-defense, and he was released from the Osage County Jail on January 30, 2017.

78.     That in leaving the courtroom, the jurors made special effort and shook Mr. Young's hand, and in the words of one juror, wished him "a beautiful life."

79.     That the acts and omissions of Michael Fisher, individually and in his role as Assistant District Attorney for Osage County caused Mr. Young's trial to be delayed and caused him to spend at least an additional year in jail.

### FIRST CLAIM FOR RELIEF
#### Negligence
#### (Against all Defendants)

80.     Paragraphs 1 through 79 of this Complaint are incorporated herein by reference as if fully set forth herein.

81.     That the actions and/or inactions of Michael Fisher, as fully laid out above, constitute negligence.

82.     That the actions and/or inactions of the Osage County District Attorney, as fully

laid out above, constitute negligence.

83. That the actions and/or inactions of the Detective Leatherman, as fully laid out above, constitute negligence.

84. That all other Defendants are thereby jointly and severally liable to Young for the injuries he suffered as a result of the negligence of those identified above together with punitive damages, the costs of this action, and a reasonable attorney's fees.

## SECOND CLAIM FOR RELIEF
### Gross Negligence
### (Against All Defendants)

85. Paragraphs 1 through 84 of this Complaint are incorporated herein by reference as if fully set forth herein.

86. That the actions and/or inactions of the Defendants, as outlined above, constitutes gross negligence and was the actual and/or proximate cause of the injuries and damages sustained by Young.

87. Defendants are all jointly and severally liable to Young for the injuries and damages he suffered as a result of said gross negligence together with punitive damages, the costs of this action, and a reasonable attorney's fee.

## THIRD CLAIM FOR RELIEF
### False Imprisonment
### (Against ALL Defendants)

88. Paragraphs 1 through 87 of this Complaint are incorporated herein by reference as if fully set forth herein.

89. The actions of all Defendants constitute false imprisonment.

90. That at all times relevant to the facts in this matter, Defendant Michael Fisher was acting within the scope of his employment and authority with the Osage County

District Attorney.

91.    That at all times relevant to the facts in this matter, Defendant Ronnie Leatherman was acting within the scope of his employment and authority with the Tulsa Police Department.

92.    All other Defendants are jointly and severally liable for the actions of Defendants Michael Fisher and Ronnie Leatherman related to their activities at issue in this matter.

93.    Defendants, jointly and severally, are thereby each liable to Young for the injuries he suffered as a result of the false imprisonment including punitive damages, the costs of this action, and a reasonable attorney's fee.

<u>SIXTH CLAIM FOR RELIEF</u>
<u>42 U.S.C. 1983- Malicious Prosecution in</u>
<u>Violation of the Fourth and Fourteenth Amendments</u>
<u>(Against All Defendants)</u>

94.    Paragraphs 1 through 93 of this Complaint are incorporated herein by reference as if fully set forth herein.

95.    42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . . .

96.    Young is a citizen of the United States and Defendants Michael Fisher and Ronnie Leatherman constitute a person for purposes of 42 U.S.C. § 1983.

97.     Defendants, at all times relevant hereto, were acting under the color of state law. Specifically, Defendant Michael Fisher was acting in his capacity as an Assistant District Attorney recognized under the laws of the State of Oklahoma, Defendant Ronnie Leatherman was acting in his capacity as a police officer for the City of Tulsa, and all other Defendants were acting pursuant to the laws of the State of Oklahoma authorizing it to employ a police force.

98.     At all times relevant hereto, Defendants Michael Fisher and Ronnie Leatherman were acting pursuant to the custom, policy, decisions, ordinances, regulations, widespread habit, usage, and/or practice of the other listed Defendants in their actions pertaining to Young.

99.     At the time of the events at issue in this matter, Young had the clearly established constitutional right to be free from malicious prosecution, including the withholding of evidence, under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

100.    Any reasonable person in the roles of Michael Fisher and/or Ronnie Leatherman knew or should have known of these rights at the time of the incident at issue in this matter as they were clearly established at that time.

101.    Defendants violated Young's Fourth and Fourteenth Amendment rights to be free from malicious prosecution without due process which resulted in Young's unlawful confinement and prosecution.

102.    Defendants Michael Fisher and Ronnie Leatherman engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Young's federally protected constitutional rights.

103.    The withholding of evidence from Young and the creation of false documents was malicious, shocking, and objectively unreasonable in light of the circumstances.

104.    The criminal proceedings brought against Young terminated in his favor with a not guilty jury verdict.

105.    The acts and/or omissions of Defendants intentionally deprived Young of his constitutional and statutory rights and caused him to suffer damages.

106.    Defendants are not entitled to qualified immunity for the conduct at issue in this matter.

**SEVENTH CLAIM FOR RELIEF**
**Violation of 42 U.S.C. 1983- Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth, Fourteenth, and First Amendments.**
**(Against All Defendants)**

107.    Paragraphs 1 through 106 of this Complaint are incorporated herein by reference as if fully set forth herein.

108.    42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . . .

109.    Young is a citizen of the United States, and Defendants are a person for purposes of 42 U.S.C. § 1983.

110.    At the time of the events at issue in this matter, Young had clearly established rights regarding production of evidence, improper withholding of evidence, and fraud.

111.    Defendants knew and/or should have known of these rights at the time of the

incident at issue in this matter as they were clearly established at that time.

112.    The acts and/or omissions of these Defendants, as described herein, deprived Young of his constitutional and statutory rights and caused him to suffer damages.

113.    Defendants are not entitled to qualified immunity for the conduct at issue in this matter.

114.    Defendant the Office of District 10 District Attorney, at all times relevant herein, was the policymaker which employed Defendant Michael Fisher, and in that capacity established policies, procedures, customs, and practices for the same.

115.    Defendants, the City of Tulsa and Tulsa Police Department, at all times relevant herein, was the policymaker which employed Defendant Ronnie Leatherman, and in that capacity established policies, procedures, customs, and practices for the same.

116.    Defendants are liable under 42 U.S.C. § 1983 for failing to supervise and train its employees, and for overlooking and covering up misconduct.

117.    Defendants developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, and these policies, procedures, customs, and/or practices were the actual and/or proximate cause of the violation of Young's constitutional and federal rights as set forth herein.

118.    In light of the foregoing, Defendants' acts and omissions constitute a violation of Young's constitutionally and federally protected rights and constitute gross negligence and/or deliberate and conscious indifference to the rights, safety, and welfare of Young.

**EIGHTH CLAIM FOR RELIEF**
**Negligent Hiring and Supervision of Defendant Leatherman**
**(Against All Non-Individual Defendants)**

119.    Paragraphs 1 through 118 of this Complaint are incorporated herein by reference as if fully set forth herein.

120.    Defendants owned, controlled and/or managed the entities which employed Defendants Michael Fisher and Ronnie Leatherman.

121.    Oklahoma recognizes a tort for the negligent hiring and supervision of employees.

122.    At the time Defendants hired Defendants Michael Fisher and Ronnie Leatherman, Defendants knew and/or should have known that they posed a risk to the persons they came in contact with in their official capacities, but Defendants nonetheless proceeded to hire and retain Defendants Michael Fisher and Ronnie Leatherman, acting with conscious indifference to the rights, safety, and welfare of others, including Young.

123.    The aforementioned acts and/or omissions, singularly or in any combination thereof, rise to the level of negligent hiring, retention, and/or supervision of Defendants Michael Fisher and Ronnie Leatherman by the other Defendants. Defendants' acts and/or omissions, when viewed objectively, involved an extreme and/or unnecessary degree of risk considering the probability and/or magnitude of harm to others. Defendants had actual and/or subjective awareness of the risk involved in hiring and retaining Defendants Michael Fisher and Ronnie Leatherman, but nevertheless proceeded with conscious indifference to the rights, safety and welfare of others when they hired and retained Defendants Michael Fisher and Ronnie Leatherman.

124.   Therefore, all non-individual Defendants are liable for the negligent hiring, retention, and/or supervision of Defendants Michael Fisher and Ronnie Leatherman, and Plaintiff is entitled to recover from Defendants all damages he sustained as a result of the acts and/or omissions of Defendants.

## NINTH CLAIM FOR RELIEF
### Respondeat Superior
### (Against All Non-Individual Defendants)

125.   Paragraphs 1 through 124 of this Complaint are incorporated herein by reference as if fully set forth herein.

126.   At the time of the incident, Defendants Michael Fisher and Ronnie Leatherman were employees, agents, and/or servants of the non-individual Defendants, and Defendants Michael Fisher and Ronnie Leatherman were acting within the course and scope of their employment with Defendants at the time of the incident at issue in this matter. As such, the non-individual Defendants are responsible for the conduct of Defendants Michael Fisher and Ronnie Leatherman under the doctrine of *respondeat superior* due to the master-servant relationship which existed at the time of the incident at issue in this matter.

127.   The actions of the Defendants warrant the imposition of punitive damages in this matter.

**WHEREFORE**, Plaintiff Yantis Cornelius Young prays for judgment against each Defendant, for general, actual, punitive and special damages in excess of seventy-five thousand dollars ($75,000.00), pre and post-judgment interest, costs, and attorneys' fees, and such other relief as the Court may deem proper.

JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED

Respectfully submitted,


*/s/ Ronald E. Durbin*
Ronald E. Durbin, II, OBA 22550
Durbin Law Firm, PLLC
1602 South Main Street
Tulsa, OK  74119
918.712.7400
918.712.4299 ~ Facsimile
durbin@durbinlawfirm.net
**Attorney for Plaintiff**
**Yantis Cornelius Young**